# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                       :
**JOHN DIAZ,**                         :
        **Plaintiff,**        :        **CIVIL ACTION**
    **v.**                          :
                                       :        **NO. 08-1033**
**C.O. MUSKER, et al.,**               :
        **Defendants.**       :
_____:

## MEMORANDUM OPINION

**RUFE, J.**                                          **January 10, 2012**

      This is a prisoner civil rights action arising under 42 U.S.C. § 1983. Plaintiff John Diaz alleges that Defendants the Commonwealth of Pennsylvania Department of Corrections ("DOC") and Mary Canino[1] violated his due process rights when they prevented him from preparing and presenting a defense to disciplinary charges filed against him. Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint. For reasons that follow, the Motion will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      The facts alleged in the Second Amended Complaint are assumed to be true for the purposes of the Motion to Dismiss. In February 2006, Plaintiff John Diaz was an inmate at the Pennsylvania State Correctional Institution in Graterford, Pennsylvania ("SCI Graterford").[2] Plaintiff alleges that on February 20, 2006, he was removed from his cell without warning, and

---

[1] Plaintiff's initial filing named two additional Defendants "C.O.I. McCusker" and "Captain John Doe," and did not name the DOC as a Defendant. Doc. No. 1. The Court granted Plaintiff leave to file an amended complaint, which Plaintiff did on July 17, 2008. In the Amended Complaint, Plaintiff named "C.O. Musker," "Captain John Doe," and "Mary Canino" as Defendants. Doc. No. 13. On February 24, 2011, Plaintiff was appointed counsel who filed a Second Amended Complaint on May 16, 2011, naming the DOC and Canino as Defendants. Doc. No. 36.

[2] Second Am. Compl. ¶ 10.

taken to the Restrictive Housing Unit ("RHU").[3]  SCI Graterford correctional officers then searched Plaintiff's cell and belongings.[4]  According to a misconduct report completed and filed by Officer Jeffrey McCusker eight days after the search, a confidential informant had told Officer McCusker that Plaintiff was planning to escape.[5]  Officer McCusker also reported that, upon searching Plaintiff's cell, correctional officers found evidence that Plaintiff was trying to escape, including a map of the prison property, a description of inmate processing, and clothing.[6]

Plaintiff received a copy of the misconduct report on February 28, 2006.  The report charged Plaintiff with "Class 1 #6 escape, Class 1 #20 disguise, Class 1 #36 contraband, implements of escape, [and] Class 1 #26 violations of the Pennsylvania Criminal Code: 901 criminal attempt, 902 criminal solicitation, 903 criminal conspiracy, 5122 implement of escape, [and] 5121 escape."[7]  In an attempt to prepare a defense for his disciplinary hearing, Plaintiff requested a copy of the inmate handbook and access to the law library, but his requests were denied, which hindered his ability to prepare his defense.[8]

On March 2, 2006, after ten days in the RHU, Plaintiff appeared before DOC hearing examiner, Defendant Mary Canino, for a hearing.[9]  Plaintiff pled "not guilty" to the charges filed

---

[3]  Second Am. Compl. ¶ 11.

[4]  Second Am. Compl. ¶ 12.

[5]  Second Am. Compl. ¶ 14.

[6]  Second Am. Compl. ¶ 13.

[7]  Second Am. Compl. ¶ 15.

[8]  Second Am. Compl. ¶¶ 16-17.

[9]  Second Am. Compl. ¶ 18.

against him.  Plaintiff also waived his right to have a disciplinary hearing within the following

six days, believing that by waiving this right, he would be given the opportunity to prepare a

defense and present it at a later hearing.[10]  During the March 2 hearing, Plaintiff admitted that the

clothing found in his cell belonged to him,[11] but explained that "many of the inmates had

different colored hats and pants,"[12] to imply that no inference of a plan to escape could be drawn

from this clothing.   Canino did not ask him any other substantive questions about the report or

give him the opportunity to call witnesses or present evidence in his defense.[13]  According to

Plaintiff, at some point prior to the hearing, Canino had interviewed Officer McCusker about the

alleged confidential informant, but had not interviewed the informant directly, and did not call

Officer McCusker as a witness at the hearing.[14]

On March 3, 2006, Canino found Plaintiff guilty of all counts charged in the report, and

"summarily sentenced him to 360 days in the RHU."[15]  Plaintiff served the first three days of his

sentence in the RHU of SCI Graterford; he was then transferred to SCI Smithfield in

Huntingdon, Pennsylvania, where he served the remainder of his 360-day sentence.[16]  Plaintiff

avers that while in the RHU, he was exposed to "continuous searches, regular relocation of his

---

[10]  Second Am. Compl. ¶¶ 18, 21.

[11]  Second Am. Compl. ¶ 20.

[12]  Id.

[13]  Id.

[14]  Second Am. Compl. ¶ 19.

[15]  Second Am. Compl. ¶ 22.

[16]  Second Am. Compl. ¶ 23.

cell, and was unable to sleep as a result of the lights that remained turned on."[17]  He alleges that "[a]s a result of th[e] improper guilty verdict, [he] is forced to endure increased scrutiny by correction officers and prison officials, including but not limited to his cell being relocated on a monthly basis, routine strip-searches, and inability to participate in certain programs and activities."[18]

On March 23, 2006, Plaintiff appeared before the Program Review Committee ("PRC") at SCI Smithfield and stated that he believed that he could not appeal the findings of Defendant Canino because he was no longer at SCI Graterford.[19]  The Committee dismissed his statement, leading Plaintiff to believe he did not have the ability to appeal.[20]  Later, at the suggestion of another inmate, Plaintiff sent several appeal requests to prison officials, but each request was denied.[21]  On August 3, 2007, Plaintiff sent a letter to a prison official requesting leave to file an appeal.[22]  His request was forwarded to the PRC, who interviewed Plaintiff on August 9, 2007.[23]  Later that same day, Plaintiff received a letter stating that, because he had submitted appeals to

---

[17]  Second Am. Compl. ¶ 24.

[18]  Second Am. Compl. ¶ 26.

[19]  Second Am. Compl. ¶ 31.

[20]  Id.

[21]  Am. Compl. ¶¶ 33-36.  Plaintiff submitted the following requests and received the following denials: (1) request to Deputy Superintendent Kormanic on April 30, 2007, which was denied on May 1, 2007;  (2) request to Deputy Superintendent Kormanic on May 4, 2007, which was denied on May 8, 2007; (3) request to Superintendent Palakovich on May 10, 2007, which was denied on May 14, 2007; and (4) request to Superintendent Palakovich on May 14, 2007, which was denied on May 17, 2007.  Id.

[22]  Second Am. Compl. ¶ 37.

[23]  Second Am. Compl. ¶ 38.

the Superintendent and the Central Office, he had exhausted all avenues of appeal afforded to him.[24]

In his Second Amended Complaint, Plaintiff alleges that Defendants violated his rights to due process under the Fourteenth Amendment of the United States Constitution (Count I) and Article I, § 9 of the Pennsylvania Constitution (Count II) "by failing to afford him a full and fair hearing before an impartial tribunal, upholding his guilty findings based on improper evidence and [an] inaccurate statement of alleged criminal conduct involved, and refusing to allow [him] to appeal the guilty verdict."[25]  Plaintiff seeks monetary damages and injunctive relief. Defendants have moved to dismiss the Second Amended Complaint, arguing that Plaintiff's claims are barred by sovereign immunity, that Plaintiff has failed to exhaust his administrative remedies, and that Plaintiff has failed to state a claim upon which relief may be granted.

## II. STANDARD OF REVIEW

### A.     Motions Filed Pursuant to Federal Rule of Civil Procedure 12(b)(1)

Where a party asserts that the Eleventh Amendment of the United States Constitution deprives a federal court of subject matter jurisdiction, "the motion may properly be considered a motion to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."[26]  "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'"[27] Where a defendant does not challenge the truthfulness of the facts material to a jurisdictional

---

[24]  Second Am. Compl. ¶ 38.

[25]  Second Am. Compl. ¶ 41.

[26]  Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 n.3 (3d Cir. 1996); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984).

[27]  Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006).

5

analysis, a court evaluates the motion as a facial attack, accepting the factual allegations as true to determine whether the facts as alleged provide a basis for the court's subject matter jurisdiction.[28]

**B.     Motions Filed Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[29]   In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[30]   Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[31]   Something more than a mere *possibility* of a claim must be alleged; rather plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[32]   The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[33]   The court has no duty to "conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[34]

---

[28]   Petruska, 462 F.3d at 302 n.3.

[29]   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

[30]   ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[31]   Twombly, 550 U.S. at 555, 564.

[32]   Id. at 570.

[33]   Id. at 562 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)).

[34]   Id. (citing McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39, 42-43 (6th Cir. 1988)).

## III. Discussion

### A.    Sovereign Immunity

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   The significance of the Eleventh Amendment lies in its affirmation that sovereign immunity limits the grant of judicial power granted to federal courts by Article III of the Constitution.[35]   The Eleventh Amendment bars a citizen from bringing suit against his own state in federal court, with certain exceptions.[36]   For example, if a state waives immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action.[37]   This is true whether the state expressly waives immunity or whether the state impliedly does so by removing a case from state to federal court.[38]   Moreover, Eleventh Amendment immunity is "necessarily limited by the enforcement provision of § 5 of the Fourteenth Amendment," which empowers Congress "to enforce by appropriate legislation the substantive provisions of the Fourteenth Amendment."[39]   Thus Congress, acting pursuant to § 5 of the Fourteenth Amendment, may abrogate Eleventh Amendment immunity without a state's consent.

---

[35]   Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984).

[36]   Tennessee v. Lane, 541 U.S. 509, 517 (2004).

[37]   See, e.g., Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 389 (1998).

[38]   Id. at 392.

[39]   Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976) (internal quotation marks omitted).

1.    **Claims Against the Commonwealth of Pennsylvania Department of Corrections**

Immunity under the Eleventh Amendment extends to state agencies, whether a lawsuit seeks monetary damages, injunctive relief, or both.[40]  The DOC is a state agency.[41]  Because the DOC is "a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity."[42]  Pennsylvania has not waived immunity in this case and Congress did not abrogate the states' sovereign immunity with the enactment of 42 U.S.C. § 1983.[43]  Consequently, Plaintiff's claims against the DOC are barred by the Eleventh Amendment and will be dismissed.

2.    **Claims Against Hearing Examiner Mary Canino in Her Official Capacity**

    a.    *Section 1983 Claims*

"[T]he Eleventh Amendment bars a suit for monetary damages against state officials sued in their official capacities."[44]  Accordingly, to the extent Plaintiff seeks money damages against Defendant Canino for actions taken in her official capacity, his claims will be dismissed.

However, the Eleventh Amendment does not bar claims for prospective injunctive relief

---

[40]  Id. at 131; Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citing Alabama v. Pugh, 438 U.S. 781 (1978) (per curium)) ("Absent a state's consent, the [E]leventh [A]mendment bars a civil rights suit in federal court that names the state as a defendant, even a claim seeking injunctive relief.").

[41]  Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000); Johnson v. Wenerowicz, No. 10-5027, 2011 WL 1399809, at *5 (E.D. Pa. Apr. 8, 2011).

[42]  Lavia v. Pennsylvania, 224 F.3d 190, 195 (3d Cir. 2000) (citing 71 Pa. Stat. Ann. § 61); see also Baker v. Flagg, No. 11-2190, 2011 WL 2990308, at *2 (3d Cir. July 25, 2011).

[43]  Austin v. Tennis, 381 F. App'x 128, 131 (3d Cir. 2010) (citing Quern v. Jordan, 440 U.S. 332 (1979)).

[44]  See Ball v. Oden, 425 F. App'x 88, 88-89 (3d Cir. 2011) (citing Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990)).

against a state official in his or her official capacity.[45]  "[A] federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury."[46]

      b.  *Pennsylvania Constitution Claims*

In <u>Pennhurst State School & Hospital v. Halderman</u>,[47] the Supreme Court held that the Eleventh Amendment bars federal courts from exercising jurisdiction over state-law claims against state officials in their official capacity.  This holding applies equally to suits for damages and for equitable relief.  Thus, Plaintiff's state-law claims against Defendant Canino in her official capacity will be dismissed without prejudice.

**3.**    <u>**Claims Against Hearing Examiner Mary Canino in Her Individual Capacity**</u>

State officials sued in their individual capacities are not immune from suit under the Eleventh Amendment, regardless of the relief sought.[48]  Therefore, Plaintiff's federal and state-law claims for monetary damages and injunctive relief against Defendant Canino in her individual capacity are not barred by the Eleventh Amendment.[49]

---

[45]  <u>Quern</u>, 440 U.S. at 337; <u>Hafer v. Melo</u>, 502 U.S. 21, 30-31 (1991) (finding that a state official may be liable for prospective injunctive relief under § 1983 for actions taken in his or her official capacity); <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 90 (1989) (holding that state official are not "persons" liable for damages under section 1983 for actions taking in their official capacities).

[46]  <u>Quern</u>, 440 U.S. at 337 (citing <u>Ex parte Young</u>, 209 U.S. 123 (1908)).

[47]  465 U.S. 89 (1984).

[48]  <u>Gattis v. Phelps</u>, 344 F. App'x 801, 804 (3d Cir. 2009) (citing <u>Allah v. Al-Hafeez</u>, 226 F.3d 247, 251-52 (3d Cir. 2000)).

[49]  Several courts in this district have dismissed claims for money damages against state officials in their individual capacities based on alleged violations of the Pennsylvania Constitution, reasoning that no cause of action

**B.      Sufficiency of the Pleadings With Respect to the Claims Over Which the Court has Jurisdiction**

Having determined that sovereign immunity bars all of Plaintiff's claims against Defendant DOC and several of Plaintiff's claims against Defendant Canino, the Court now addresses whether those claims over which it does have jurisdiction[50] are sufficiently pled.

**1.      Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA")[51] requires a prisoner to exhaust a correctional facility's administrative remedies before filing a § 1983 action regarding conditions of prison life.  The PLRA does not require exhaustion of all remedies; it requires only exhaustion of remedies "as are available."[52]  "Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant," and may be raised by a defendant as a basis for a motion to dismiss.[53]

According to Defendants, Plaintiff was required to follow the DOC's "Official Inmate Disciplinary Policy and Inmate Grievance System" to demonstrate compliance with the exhaustion requirement of the PLRA.  Administrative Directive 801 requires that a prisoner who wishes to appeal the decision of a hearing examiner do so by filing a first level appeal to the

---

for money damages exists under the Pennsylvania Constitution.  See, e.g., Bowers v. City of Philadelphia, No. 06-3229, 2008 WL 5210256, at *8 (E.D. Pa. Dec. 12, 2008) (collecting cases).  However, Defendants have not moved to dismiss Plaintiff's claim on this basis.  Since the Supreme Court of Pennsylvania has not definitively addressed this issue, the Court will not *sua sponte* address this unsettled state law issue.

[50]  These claims are the § 1983 official capacity claim against Defendant Canino to the extent Plaintiff seeks prospective injunctive relief, and the § 1983 and Pennsylvania constitutional claims asserted against Defendant Canino in her individual capacity for both injunctive relief and monetary damages.

[51]  42 U.S.C. § 1997e(a).

[52]  Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (citing 42 U.S.C. § 1997e(a)).

[53]  Id.

Program Review Committee ("PRC") within fifteen days of hearing examiner's decision.  Here, Defendants assert that Plaintiff did not file a grievance relating to the instant lawsuit until almost ten months after he was found guilty of attempted escape.

Canino found Plaintiff guilty of attempted escape on March 3, 2006.  Three days later, he was transferred from SCI Graterford to SCI Smithfield.  Plaintiff did not file an appeal to the PRC at SCI Graterford prior to being transferred.  When he appeared before the PRC at SCI Smithfield, he stated that he believed he could not appeal the guilty finding because he was no longer at SCI Graterford.  The PRC did not correct his statement, leading Plaintiff to believe there were no other administrative remedies available to him on account of his transfer. Defendants have not shown that Plaintiff had the ability to appeal the decision after his transfer to SCI Smithfiled; Plaintiff alleges he did not.  At this stage of the proceedings, the Court finds that Plaintiff has adequately pled exhaustion of administrative remedies *available* to him and Defendants have not met their burden of proving otherwise.[54]

---

[54]  In <u>Brown v. Croak</u>, the Third Circuit addressed a case analogous to the case before this Court.  The Third Circuit reversed the district court's order dismissing the case for failure to exhaust administrative remedies explaining:

> Defendants have not met their burden of proving the affirmative defense of failure to exhaust remedies. Therefore, this question may not be resolved as a matter of law by this Court without further discovery. Brown's claim that prison officials told him to wait is a factual question that is disputed, has not yet been disproved by defendants, and has not been resolved adequately by a trier of fact.

<u>Brown v. Croak</u>, 312 F.3d at 112.

2. __Personal Involvement in the Alleged Wrongdoing__

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable."[55]  Personal involvement is shown by allegations of actual involvement in, personal direction of, or knowledge of and acquiescence to the asserted civil rights violation.[56] Here, Plaintiff has not alleged that Defendant Canino had any personal involvement in his alleged pre- and post-hearing deprivations.  Plaintiff does not allege that Canino denied Plaintiff a copy of the inmate handbook, refused him access to the law library, or refused to grant his appeal; nor does he allege that Canino directed another to deny Plaintiff's requests, or that she knew of and acquiesced to another's denial of these requests.  Thus, to the extent Plaintiff alleges a violation of his due process rights based on his inability to obtain a copy of the inmate handbook, to go to the law library, or to appeal his guilty findings, such claims are dismissed.

3. __Sufficiency of Plaintiff's § 1983 Due Process Claim__

Defendants argue that Plaintiff fails to state a claim because he cannot establish a protected liberty interest in avoiding a 360-day confinement in the RHU.  The Court agrees.

A plaintiff seeking to invoke the procedural protection of the Fourteenth Amendment's Due Process Clause must establish that a life, liberty, or property interest is at stake.[57]  The Supreme Court has held that a plaintiff may establish "a liberty interest in avoiding particular

---

[55]  Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)) (internal quotation marks and alteration omitted).

[56]  Rode, 845 F.2d at 1207.

[57]  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

conditions of confinement."[58]  To determine whether a plaintiff can establish a protected liberty

interest in avoiding a particular condition of confinement, a court must consider the nature of the

conditions imposed and whether they place "atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life."[59]

      Discipline by prison officials is an ordinary incident of prison life and is necessary for the

effective functioning of the prison system.[60] An inmate's placement in disciplinary custody "will

implicate a protectable liberty interest only if it dramatically departs, in length of time or

otherwise, from basic prison conditions."[61]  This depends not only upon the length of the

confinement, but also upon the conditions.[62]  With respect to the length of confinement, the Third

Circuit has held that placement in a restrictive housing unit for a period as long as fifteen months

does not deprive an inmate of a liberty interest.[63]

      Here, Plaintiff's 360-day confinement in the RHU was not an "atypical and significant

hardship," sufficient to implicate a liberty interest.  The 360-day length alone does not implicate

a liberty interest and Plaintiff has not alleged facts concerning his conditions of confinement in

the RHU that suggest that these conditions were significant in relation to the ordinary incidents

of prison life.  The majority of the facts alleged with respect to Plaintiff's conditions of

---

[58]  Id. at 222.

[59]  Id. at 222-23 (quoting Sandin v. Connor, 515 U.S. 472, 484 (1995)).

[60]  Sandin, 515 U.S. at 485.

[61]  Williams v. Bitner, 307 F. App'x 609, 610 (3d Cir. 2009).

[62]  Pressley v. Blaine, 352 F. App'x 701, 706 (3d Cir. 2009).

[63]  See Mearin v. Dohman, No. 06-4859, 2009 WL 3127760, at *8 (E.D. Pa. Sept. 29, 2009) (comparing Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) with Shoats v. Horn, 213 F.3d 140 (3d Cir. 2000)).

confinement are those which occurred *after* his release from the RHU.

Plaintiff has alleged that he has endured ongoing and increased scrutiny by prison officials, monthly cell relocation, routine strip-searches, and the inability to participate in certain programs and activities, even though his term of confinement has ended.[64]   These allegations are insufficient to proceed against Canino.  Plaintiff does not allege that Canino had personal involvement in imposing these conditions at SCI Smithfield or that she had any involvement with Plaintiff's incarceration after she imposed the 360-day sentence.  Process is available to Plaintiff to challenge his conditions of confinement at SCI Smithfield, against the appropriate prison officials.  Plaintiff has simply not stated a claim against Defendant Canino. Consequently, the Court will dismiss the § 1983 claims against Canino.

### 4.    Plaintiff's State Law Claims

"Article 1, Section 9 of the Constitution of Pennsylvania is coextensive with the due process protections of the United States Constitution."[65]   The Pennsylvania Supreme Court has expressly held that the analysis is the same under both due process clauses.[66]   Thus, having determined that Plaintiff has failed to state a claim for a due process violation under the Fourteenth Amendment to the United States Constitution, the Court likewise finds that Plaintiff has failed to state a claim under the Article 1, Section 9 of the Pennsylvania Constitution.

---

[64]  Second Am. Compl. ¶ 26.

[65]  Commonwealth v. Scher, 803 A.2d 1204, 1215 (Pa. 2002).

[66]  Id.

14

## IV. Conclusion

For the foregoing reasons, the Motion to Dismiss will be granted.  The Court will dismiss all claims against Defendant DOC, Plaintiff's § 1983 claim for money damages against Defendant Canino in her official capacity, and Plaintiff's state-law claims against Defendant Canino in her official capacity for lack of subject matter jurisdiction.  The Court will dismiss with prejudice, Plaintiff's due process claims against Defendant Canino to the extent Plaintiff seeks to hold her liable for due process violations resulting from Plaintiff's inability to obtain a copy of the inmate handbook, gain access to the law library, or appeal the guilty finding.  The remainder of Plaintiff's claims will be dismissed without prejudice for failure to state a claim.

An appropriate Order follows.